**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       CASE NO. 04-80857
       HON. LAWRENCE P. ZATKOFF

D-5 EDWARD HUBBERT, and
D-6 JERMAINE HUBBERT,

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the Theodore Levin United States Courthouse,
in the City of Detroit, State of Michigan, on

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

    This matter is before the Court on Defendant Jermaine Hubbert's (1) Motion to Suppress Evidence and (2) Motion to Suppress Criminal Convictions. Defendant Edward Hubbert has joined in Defendant Jermaine Hubbert's motion to suppress. The Government responded to the motions, and Defendants did not reply. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LCRR 12.1 and E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion to suppress will be DENIED. Defendant Jermaine Hubbert's motion to suppress

his prior criminal convictions will be DENIED WITHOUT PREJUDICE.

## II.  BACKGROUND

On October 15, 2004, a Grand Jury indicted Defendants Jermaine Hubbert and Edward Hubbert, along with twelve other co-defendants, on a total of sixty counts of Possession with Intent to Distribute a Controlled Substance, 21 U.S.C. § 841(a)(1), Distribution of a Controlled Substance, 21 U.S.C. § 841(a)(1), Conspiracy to Possess with the Intent to Distribute and Distribution of Cocaine and Cocaine Base, 21 U.S.C. § 846, and Possession of a Stolen Firearm, 18 U.S.C. § 922(j). The Government alleges that Defendants operated a twenty-four-hour mobile drug distribution ring. Defendants Jermaine and Edward Hubbert, however, maintain that evidence seized from their residence at 6539 Montrose in Detroit, Michigan, should be suppressed because the affidavit used to obtain the search warrant lacked probable cause.[1]  In addition, Defendant Jermaine Hubbert argues that his previous misdemeanor convictions for domestic violence and drug possession, along with a felony controlled substance conviction, should be suppressed.

**A.     Factual Background**

The Government searched Defendant Jermaine Hubbert and Defendant Edward Hubbert's home on December 7, 2003, pursuant to a search warrant issued by United States Magistrate Judge Donald Scheer on the same day.  Magistrate Judge Scheer relied on the affidavit of Special Agent Michael Yott, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, to determine that probable cause existed for the search.  Agent Yott's affidavit spans more than seventy paragraphs and details extensive drug trafficking by the named Defendants.

---

[1] None of the parties describe the evidence seized at 6539 Montrose.

According to Agent Yott, the Defendants named in his matter referred to themselves as the "Joy Boys." Yott Aff. at ¶ 3. The Joy Boys' buyers were primarily individuals from western Detroit suburbs. *Id.* These buyers would call one of two "customer service" cellular phone numbers to set up a drug buy. *Id.* The person answering the "customer service" phones would direct the caller to meet a delivery person, usually on a residential side-street. *Id.* There were times, according to Agent Yott, that the delivery vehicle would approach a number of cars lined up along the street. *Id.* Agent Yott alleged that the delivery person or his passenger would quickly exchange crack or powder cocaine for money through the window of the delivery vehicle. *Id.* According to Agent Yott, Defendants worked in shifts, re-supplied the delivery vehicle on the fly, and operated at all hours of the day and night grossing more than $20,000.00 per day in street level narcotics sales. *Id.* at ¶¶ 3-4.

Defendants Jermaine and Edward Hubbert are mentioned many times in Agent Yott's affidavit, and he specifically described them as "two (2) of the consistent workers or delivery persons . . . ." Yott Aff. at ¶ 8. For instance, the affidavit indicates that on November 25, 2002, Special Agent Secrete and a confidential informant referred to as "ATF-1" purchased cocaine from Defendants Jermaine and Edward Hubbert after calling the "customer service" number and setting up a buy. *Id.* at ¶ 11. Agent Secrete purchased cocaine from Defendant Jermaine Hubbert again on December 10, 2002, and December 11, 2002. *See id.* at ¶¶ 12-13. Agent Secrete also purchased cocaine from Defendant Jermaine Hubbert on February 26, 2003, and June 18, 2003. *See id.* at ¶¶ 16, 22.

According to Agent Yott, in addition to actually purchasing narcotics from Defendants Jermaine and Edward Hubbert, law enforcement agents also observed both Defendants acting in

3

furtherance of the conspiracy in various ways. For instance, on March 5, 2003, federal agents executed a search of an apartment leased by co-defendant Contrell Smith. The search revealed four firearms, a large amount of prepackaged cocaine, cocaine base, manufacturing equipment, and papers in the names of various members of the conspiracy. *See* Yott Aff. at ¶¶ 20-22. During the search, Defendant Edward Hubbert arrived at the apartment and tried to obtain entry using his key. *See id.* at ¶ 21. Agent Yott also saw Defendant Jermaine Hubbert exit the apartment a few days before the search. *See id.* at 20. Additionally, on July 18, 2003, agents executed a search warrant at a separate motel room registered to Defendant Contrell Smith, resulting in the seizure of 200 grams of cocaine base. *See id.* at 24. Agent Secrete observed Defendant Jermaine Hubbert enter the walkway of the motel during surveillance of the motel. *See id.*

Agent Yott also details in paragraph 32 of his affidavit how federal agents witnessed Defendant Edward Hubbert engage in multiple narcotics transactions on October 6, 2003, before returning to his residence at 6539 Montrose. *See id.* at ¶ 32. Agent Yott alleges that shortly after Defendant Edward Hubbert returned home, a white Cadillac Escalade being driven by Defendant Contrell Smith arrived at the residence. According to Agent Yott, Defendant Edward Hubbert then exited the home and entered the Cadillac through the rear driver's side door while Defendant Jermaine Hubbert stood at the front of the home. *See id.* After approximately five minutes, Defendant Edward Hubbert exited the Cadillac, spoke briefly with Defendant Jermaine Hubbert, and then departed in a green Chrysler. Agent Yott averred that in his opinion, the purpose of the meet was for "Contrell Smith [to] re-suppl[y] Edward Hubbert with narcotics for future sales . . . ." *Id.*

Defendants Jermaine and Edward Hubbert's home is also mentioned in paragraphs 36, 38, 39, and 42. In paragraph 36, Agent Yott describes how Defendant Cornell Smith and Defendant

4

Edward Hubbert met at 6539 Montrose because, according to surveillance reports, Defendant Edward Hubbert was having problems with his delivery vehicle. In paragraph 38, Agent Yott stated that in his opinion, Defendants Contrell Smith and Galvin Bowden re-supplied Defendant Jermaine Hubbert with narcotics during a meeting at 6539 Montrose on October 19, 2003. In paragraph 39, Agent Yott stated that on October 21, 2003, agents monitoring the "Joy Boys'" cellular phones learned that Defendant Jermaine Hubbert needed to be re-supplied with narcotics. According to Agent Yott, agents observed Defendant Arvie Quinn meeting with Defendant Jermaine Hubbert at a Holiday Inn. Shortly thereafter, Defendant Jermaine Hubbert drove directly to 6539 Montrose. Agent Yott stated that based on his experience, he believed that "[Defendant] Hubbert arrived at the Holiday Inn to obtain[] illegal narcotics from [Defendant] Quinn for sale and then took a quantity to 6539 Montrose, Detroit, Michigan." *Id.* at 39. Finally, at paragraph 42, Agent Yott described how agents witnessed Defendant Cornell Smith leaving 6539 Montrose with Defendant Jermaine Hubbert before selling narcotics.

### III.  DISCUSSION

**A.     Defendants' Motion to Suppress Evidence**

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. CONST. amend. IV. Determining probable cause to issue a search warrant requires a practical, common-sense evaluation of the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, probable cause to search requires that, based on the totality of the circumstances, there is a fair probability that contraband or other evidence of a crime will be found in the place to be searched. *See Gates*, 462 U.S. at 236.

Moreover, a reviewing court must pay great deference to the probable cause determinations of the Magistrate Judge, whose findings "should not be set aside unless arbitrarily exercised." *United States v. Pelham*, 801 F.2d 875, 877-78 (6th Cir. 1986).

The deference to the Magistrate Judge's probable cause determinations reflects the preference for search warrants. Search warrant affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). As the Sixth Circuit has observed:

> When a court is faced with a situation wherein there is at issue the Quantum of evidence necessary to be alleged to support a finding of probable cause, and when the affidavit arguably shows circumstances which could support a determination that evidence of a federal crime will probably be found in the place to be searched, the court should [consider that] one of the best ways to foster increased use of warrants is to give law enforcement officials the assurance that when a warrant is obtained in a close case, its validity will be upheld.

*United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979) (quoting *United States v. Giacalone*, 541 F.2d 508, 513-14 (6th Cir. 1976)). In the end, a search warrant will be upheld if there was a "'substantial basis for . . . conclud[ing]' that a search warrant would uncover evidence of wrongdoing . . . ." *Pelham*, 801 F.2d at 877-78 (quoting *Gates*, 462 U.S. at 236).

Even if probable cause is lacking, however, the exclusionary rule will "not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984); *see also United States v. Czuprynski*, 46 F.3d 560 (6th Cir. 1995). This good-faith exception will not be applied, however, if (1) the magistrate is misled by false information; (2) the magistrate abandons his role as an impartial judge; (3) the affidavit for the warrant is so lacking in probable cause that reliance on it is objectively unreasonable; or (4) the warrant is facially deficient. *See United States v. Van*

*Shutters*, 163 F.3d 331, 337 (6th Cir. 1998).

### 1. *Whether Agent Yott's Affidavit Established Probable Cause*

Defendants Jermaine and Edward Hubbert maintain that Agent Yott's affidavit was not sufficient to create probable cause to believe that incriminating evidence would be found at their residence. Specifically, Defendants argue that the affidavit suggests only that they "were delivery persons who had to be constantly re-supplied on the job, so to speak, by persons who had access to the locations where narcotics were stored. Nowhere in the affidavit is there even a suggestion that the Montrose address is one of those places." Motion to Suppress Evidence, at ¶ 11. The Government responds by arguing that the facts alleged in Agent Yott's affidavit sufficiently link 6539 Montrose to the distribution of drugs. In addition, the Government argues that the Magistrate Judge was entitled to infer that contraband would be found at the residence of individuals such as Defendants Jermaine and Edward Hubbert, who were so actively engaged in narcotics distribution. Finally, the Government argues that even if the warrant issued without probable cause, Defendants have not shown that the agents executing the warrant acted in bad faith.

The Court finds that the Magistrate Judge validly issued the search warrant based on probable cause. Agent Yott's affidavit contained multiple references to meetings at 6539 Montrose between various Defendants, all of whom Agent Yott alleged were actively engaged in a significant conspiracy to distribute illegal narcotics. Agent Yott stated that in his experience some of the meetings at 6539 Montrose involved the transfer of narcotics from one Defendant to another. Even if these meetings occurred outside the home, the Court finds that it was reasonable for the Magistrate Judge to infer that contraband would be found in the home given the extensive drug activity occurring there. More importantly, even if Agent Yott's affidavit did not set forth the multiple ways

in which 6539 Montrose aided the conspiracy, the substantial drug-related activities of Defendants Jermaine and Edward Hubbert justified a search of their home. *See United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (citing cases for the proposition that in the case of drug dealers, evidence is likely to be found where the dealers live); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. In the case of drug dealers, evidence is likely to be found where the dealers live."). Accordingly, the Court finds that under the totality of the circumstances, the Agent Yott's affidavit provided probable cause to believe that evidence of a crime would be uncovered at 6539 Montrose.

### 2. *The good-faith exception*

In addition, the Court finds that even if the search warrant was not based on probable cause, the officers did not rely on a "bare bones" affidavit, so lacking on probable cause that their reliance upon it was objectively unreasonable.[2] *See Van Shutters*, 163 F.3d at 337. A "bare bones" affidavit is one that "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (quoting *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996)). Possession and distribution of cocaine is a crime under federal and state law. Agent Yott described in detail the investigation he and others undertook

---

[2] As the Court noted above, the good-faith exception will not be apply in the following situations: (1) if the magistrate is misled by false information; (2) if the magistrate abandons his role as an impartial judge; (3) if the affidavit for the warrant is so lacking in probable cause that reliance on it is objectively unreasonable; or (4) if the warrant is facially deficient. *See Van Shutters*, 163 F.3d at 337. Defendants do not claim that the Magistrate Judge was misled by false information, abandoned his role as impartial judge, or that the warrant was facially deficient. Thus, the Court will only discuss whether it was objectively unreasonable for the officers to rely on the affidavit.

to connect Defendants to a drug conspiracy that in his professional opinion conducted significant activity at 6539 Montrose. Thus, Agent Yott's affidavit does not state mere suspicions or conclusions. *See id.* Therefore, it was reasonable for the agents to believe, in good faith, that the warrant was valid. Accordingly, even if the warrant was erroneously issued, the search must be upheld and Defendants' motion to suppress must be denied.

**B.     Defendant Jermaine Hubbert's Motion to Suppress Criminal Convictions**

Defendant Jermaine Hubbert also argues that his previous convictions for domestic violence and drug activity should be suppressed because they did not involve an element of dishonesty or false statement under Federal Rule of Evidence 609. The Government responds by agreeing that Defendant's misdemeanor convictions are probably not admissible. Nevertheless, the Government argues that Defendant's felony drug conviction is admissible under Rule 609 because its probative value outweighs its prejudicial effect.

Rule 609 provides as follows, in pertinent part:

> **(a) General rule.** For the purpose of attacking the credibility of a witness,
>
> **(1)** evidence . . . that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> **(2)** evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

FED. R. EVID. 609. Thus, under Rule 609, felony offenses are admissible if their probative value outweighs any prejudice the defendant, while offenses involving an element of dishonesty or false statement are admissible regardless of prejudice. *See United States v. Sloman*, 909 F.2d 176, 180 (6th Cir. 1990). To determine whether the probative value of a previous felony conviction

outweighs its prejudicial effect, the Court is required to balance the following factors: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Sloman*, 909 F.2d at 181 (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1976)).

The Court finds premature Defendant Jermaine Hubbert's request for a decision on whether his prior convictions will be admissible at trial. Without hearing his testimony, if any, the Court is not in a position to weigh the above factors set forth in *Sloman*. *See e.g., United States v. Bender*, 265 F.3d 464, 471 (6th Cir. 2001) (holding that defendant's statements on direct opened the door to impeachment with prior convictions). As the Sixth Circuit has stated:

> A trial judge who declined to make a preliminary ruling on admissibility [of a prior felony conviction] would be following a much safer course. If the defendant were to choose not to testify, no ruling need be made. If the defendant were to testify, the judge could rule on the impeachment after hearing the defendant's actual testimony. A new trial would be ordered only if the ruling was an abuse of discretion and was not harmless error.

*United States v. Luce*, 713 F.2d 1236, 1240 (6th Cir. 1983). Therefore, in the event that Defendant Jermaine Hubbert decides to testify, the Court will entertain a motion to exclude his prior convictions after hearing his testimony on direct examination. Accordingly, Defendant Jermaine Hubbert's motion to suppress his criminal convictions will be denied without prejudice.

## VI. CONCLUSION

For the reasons set forth above, Defendant Jermaine Hubbert's Motion to Suppress Evidence

[dkt. # 77], which Defendant Edward Hubbert joins, is hereby DENIED. Defendant Jermaine Hubbert's Motion to Suppress Criminal Convictions [dkt. # 74] is hereby DENIED WITHOUT PREJUDICE.

    IT IS SO ORDERED.

                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated: July 29, 2005

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 29, 2005.

                                            s/Marie E. Verlinde
                                            Case Manager
                                            (810) 984-3290